Good morning. First matter is U.S. v. Apple Macpro computer. Good morning, Your Honor, and may it please the Court. Keith Donahue for Appellant Francis Rawls. I'd like to reserve three minutes of my time for rebuttal, if I may. Okay. Let me ask you, there was a finding, how long has your client been in so far? Very nearly three and a half years. Okay. There was a finding, I guess, before the magistrate judge, the district court noted it, that he could remember at that point, he did remember his password. Are you willing to make any representation now as to whether or not he knows or remembers his password? He did. His position has always been that he does not remember his password. I can't look into his mind, but that is always. Okay. Okay. The finding in September 2015 was based on a prima facie showing, and is not the subject of this appeal, but it is now. Would he be willing, and I don't know, and one of my clerks told me that it doesn't matter, but would he be willing to consent to Apple, for Apple to come in and have one of their IT people, if the government were willing to, subpoena them, have Apple come in to open up the hard drives? Have you talked to them? I don't know. I'm not sure his consent would be required, to be honest. I would suggest that at any measure. Well, that may not be one to do with absenteeism. I just don't know, and it's not on the record. They may not want to do it absent his consent. That's why I asked. Apple might not. Apple may not. That's a matter of company policy. Then they're hit with contempt. At least they can afford to fight the subpoena. I'm not sure that Mr. Rawls can. Right. And we did see when there was the big contest with Apple, eventually the government did manage to unencrypt the device. Is it a matter that he's willing to stay in custody, as long as the government is asking him to open that computer? I mean, he's been there for three and a half years. It seems like the key to his freedom is, he has the key to his freedom. Well, of course, he maintains he does not. But he says, I can't remember the password. Correct. But then there may be another key that would lock him up for longer. So, if he opens it up. Yeah. A bigger key. And not even a grand jury has found as much as that yet, Your Honor. These difficult questions, very difficult questions, are exactly the kinds of questions that Congress attempted to steer off in this context by fixing a bright line of 18 months limitation in this context. If that statute applies. Correct. Which is the issue on this appeal. And we have a presidential opinion basically saying it doesn't apply. I don't believe we have a presidential decision. And were the cases here before it came up? Paris. It did not. That was done under Rule 41A. You're saying that given, I guess, Judge Vineski's opinion there, we're not bound by the reasoning in Judge Vineski's opinion? No, I allow that the court's bound by the reasoning in the prior opinion. It simply didn't address Section 1826 in any regard whatsoever. The opinion does not mention the statute at any point. And there's no indication informed of the court's reasoning in any respect. But there's still the concept that if Congress in any way wants to pull back on the powers of the courts, particularly to run their own business, which includes sanctions for not obeying the court order, that that has to be very specifically drawn out. We will not imply it from general language in a statute. Right. So the government relies heavily on a canon to the effect, Your Honor, states. And I think it's important to recognize that that canon applies to a threshold question, which is whether a particular statute was intended to limit inherent judicial power at all. Right. In this case, Section 1826 is indisputably intended in some circumstances to limit judicial power. It fixes an 18-month limitation. It needs to be contrasted with, say, the rule of civil procedure that authorizes motions to dismiss for lack of prosecution. One leading decision held, well, that doesn't limit court's authority to dismiss sua sponte for lack of prosecution. And in determining that, that that particular rule was supplementary rather than restrictive, there may be a canon that plays a role. But in this case, by fixing an 18-month limitation, there simply can be no debate. Congress intended to limit judicial power. The only question is, does that statute apply or does it not? And in the Michelson decision, which also concerned the right to a jury trial and contempt proceedings, the Supreme Court stated unequivocally that inasmuch as the intent to limit judicial power is evidence, then the words of a statute are to be given their plain and ordinary meaning and not to be construed in light of submissions about what necessity or policy requires. And it's the Michelson case. But how does the plain language of this statute help you? It talks about a witness. Yeah, I don't know. I'm not saying the statute is necessarily plain in that regard. Simply plain that it's restricting judicial power in some instances. So now we have to know if it applies. So to determine whether it applies, it uses the word witness in a broad sense. It specifically identifies a witness. Are you saying that he is a witness or would be a witness against himself? No. Personally, I would, but I would acknowledge that the court has upheld the ruling that he was not. We are bound. Yeah. Yes. So he is not a witness. He's not a witness against himself within the meaning of the Fifth Amendment. He is a witness within the meaning of Section 1826. A witness in regard to a grand jury or court collateral or proceeding collateral to a grand jury or court proceeding? No. Because they use Rule 41, not a grand jury subpoena. Right. I don't think the fact that this proceeding was instituted by a Rule 41 search warrant application means it's not a court proceeding. It is still a court proceeding. Congress used terminology that it's hard to imagine could be written any more broadly. It said any proceeding before or ancillary to any court or grand jury of the United States. It meant to speak of any judicial proceeding, federal judicial proceedings, and it meant to limit the federal power to confine for civil contempt, not criminal contempt, but civil contempt in the case of a witness called upon to provide information to 18 months. How is it a judicial proceeding then? This is a matter of the government requiring him to open his computer. Yes, it's a judicial proceeding. He has the key to it. The government is seeking to compel him to do that by availing itself of judicial process and the judicial contempt power. It constituted judicial proceedings by means of a search warrant application. But doesn't it have to be a judicial proceeding prior to the request for a contempt ruling? No, that's exactly language that is certainly nowhere to be found by any means in this statute, which simply refers to any proceeding before any court or grand jury of the United States. It says nothing like prior to. There's absolutely no limitation like that in the statute. So I don't understand how when we think of what a warrant is, we think of it as a court exercising independent judgment as to whether or not a party, the government, has made a showing of probable cause sufficient to support the warrant's issuance. The court is acting as a court, and it's a court proceeding that's application. That proceeding ultimately comes to an end when the warrant is returned, pursuant to Rule 41-F, and then filed with the clerk, pursuant to 41-I. But under your definition of court proceeding, the court proceeding would still continue. No, I think a search warrant proceeding does come to an end with the return of the warrant. And then the filing with the clerk, and then there are proceedings subsequent to that filing, because the filing wasn't done in a vacuum. It was in relation to some other event or some inquiry. Why wouldn't it continue? Well, I think you might have a prosecution instituted at that point, which would be a new case at a new number. And then an appeal, and then a petition for cert. And under your definition, the court proceeding would be ongoing throughout all of that. No, I would say in this situation, there is first a proceeding on a search warrant application. It comes to a conclusion. And then if an indictment follows, there may be a proceeding on that indictment. The warrant comes to a conclusion, but you're using the term court proceeding in a very broad sense. I think that the Rule 41 proceeding comes to a conclusion. The prior decision in this case contemplated perfectly reasonably a Rule 40. That subject matter jurisdiction in this instance lay under Rule 41. That's the holding of the prior opinion we challenged. It wasn't an adversarial proceeding. This was a one party going to get a search warrant. Is that accurate? That's how it began. It did become an adversarial proceeding because after getting that search warrant, the government applied pursuant to the All Writs Act for the decryption order that's led to my client's confinement. They did serve that upon... That was an adversarial proceeding? Yes, because he filed a motion to quash, which was denied by a magistrate judge, which led to the prior appeal and the decision there. At some point, it evolved into an adversarial judicial proceeding. It evolved into an adversarial proceeding. It was already a judicial proceeding. There had been an application to a court for a judicial process to issue. The government says that this situation of my client having been confined for nearly three and a half years without a jury trial, without an indictment, should be permitted to continue indefinitely. And it's a very troublesome situation, I think, reflected in the questions right off the bat. It's such an unusual case, and it's hard to know how to get your hands around it. It is indeed. So Congress recognized it wasn't necessarily thinking about encryption, but it was thinking about the context of civil contempt, and persons who are confined under orders of civil contempt, where certain parties before the Congress were urging, of course, that has to continue forever. That's how it works. Aren't there other avenues of escape? For instance, a petition for release on the basis that it has been demonstrated that the imprisonment has no chance at all of producing the desired information. Yes, I think there is potentially an avenue to relief through showing that the confinement has lost its course of character because it's simply not going to compel compliance. And that determination of whether that point has been reached occasions very, very difficult factual determinations to be made. Whether the person is able to comply. So in this instance, what's in the head of a person, whether or not he can remember the password, and whether the person is so resolute in non-compliance that further confinement will have no coercive effect. Congress wanted to steer off. Yeah, but the latter situation is very easy, because there you get into this traditional, classical problem with the person having the keys to the cell in his or her pocket. We talked about it in Janica. That's a different situation. If the person is willing to just, for whatever reason it was the case in Janica, just stay in prison out of stubbornness or spite, that's on that person. This is, this may not be that situation. Well, Janica would definitely not be covered by the statute. I agree, I agree. Because what's the issue there is somebody being held in contempt, essentially for failing to turn over money. That's one situation where people are held in contempt. Another, as here, is when they're being asked to turn over information. He's being asked to supply a memorized security code, and to do so in a way that makes available. He's not being asked to supply the code. He's being asked to supply the tablets with the code open so that they can be read. He's asked to use the code. I would suggest he's being asked to do both. But if we want to look at it as he's simply being asked to supply the contents of the machines, then that is certainly information as well. The statute specifically refers to information, comma, including any documents, records, or other material. And the legislative history says that language was intended to cover electronically stored information. In 1970, Congress said that. So in my mind, he's being asked to supply two kinds of information. But if we want to view it that he's simply being asked to supply the contents of the machines, then that's information within the meaning of the statute. You don't raise a self-incrimination argument. We did on our prior appeal, unsuccessfully. And if you didn't have a testimony of the sister of what she had seen on these exterior hard drives, you might have a better Fifth Amendment argument. But the prosecution knows what's on the hard drives. They've had a verbal description from the sister of what she has seen on the hard drive. So it doesn't make it a very different Fifth Amendment approach. Yeah, I don't think those aspects of the record are, in any sense, material to the question raised on this appeal, which is a pure question of statutory interpretation. And whether being compelled to supply the contents of a device by entering a password qualifies as providing information within the meaning of Section 1826, in which case the statute plainly fixes an 18-month limitation. That is an easier question. They aren't even asked to provide the information. They're simply, he's asked to provide the laptops, the computers, with the code entered so that what's on the computers can be read. That's how the government frames it. Let's take the government's framing. Let's imagine the situation here really were a physical key, metal key that you put in a physical lock and turn. And he knows where it is. They can show he's got it in his pocket, right? If we're going to spin out that analogy and make it precisely equivalent to here, then what the government would be asking would be for my client to come in with the key, unlock this safe, put the key back in his pocket, and leave. The government has, to no end, told us that it has no interest in this password, that's not even material at all. So the analogy, if we're going to look at it that way, would be come in, bring your key, open the safe, give the papers inside the safe, and leave. That's providing the papers. That is providing the papers. They want to see what's in the computer. They have a pretty good idea what's in the computer, but they want to verify. I'm not terribly persuaded by their factual showing, but in the law of the case, it's been found. Now, he says he forgot the password, and that's why he can't open it. Is that accurate? Yeah, he has not testified on the matter, and therefore, it was found that there was no evidence. But he's, through his counsel, at that hearing, I'd like to judge McKee's question initially, but there is a way he can find out what the password is, perhaps. No, there's nothing in the record to suggest he has a way of finding out. Apple computer would not assist in helping him? I don't know for a fact, but I think Apple actually makes quite a big deal out of the position that your password is not available to them. That it's only stored on your device, and it's actually something they trumpet to show why they're protective of privacy. So it's a maybe. I, at least, as counsel standing here today, have no objection to government pursuing things for Apple. I wish they would, and I can't represent whether my client would consent to that, but I would concur with him about it. But as an agent, you may have just made that concession. I wish not to make a representation as an agent, but as a lawyer, in my view, I would take that suggestion to him, certainly. I don't know that Apple, but I don't think Apple has the password. At least, from everything I've read, they would not. They may have the password, but they may be able to, if they're willing to, find a way to access the hard drives, that isn't the password. Maybe. That's not a matter of self-detention elsewhere. Yeah, yeah. Where is this, where is your client being held? He's at the Metropolitan Detention Center in Brooklyn. Detention Center. Yep, and that was, in fact, the institution where there was recently a power outage. That's where he is? Yes. That's where he's been for years now, and he's 15 days shy of three and a half years altogether in custody. So that's disturbing. It's not a good situation for the court or for my client. Congress recognized that. It's a troubling situation. They said we want a bright line. The key to his freedom is in his pocket. No, well, that is the traditional understanding of why someone can be locked up for civil contempt. Congress used that very dictum, appears repeatedly throughout the legislative history. With that dictum in mind, Congress said 18 month maximum. It was not content to permit indefinite confinement to stretch on continuously based on the key to his own pocket maximum. And Judge Du Bois, I think, in his concurrence in Harris, sets out that position in a productive way. Yes, you know, a person may have the key to his confinement in his own pocket, but that still doesn't mean there's no limitation on the length of time. In Harris, there's also a line that assumes that the person does have the key and doesn't cover a situation like this where there may, speaking metaphorically, may not, maybe there's a hole in the pocket and the person lost the key. That's what we have here, theoretically. Right. I mean, certainly there's been no admission in this case that he can remember the passwords. It is different from Chadwick and Harris in that way. In Harris, there could be no debate whatsoever that the petitioner could stop because he was engaged in affirmative criminal acts of harm to prosecutors and judicial employees involved in his case. In Chadwick, the state court had found that Mr. Chadwick was able to supply the $2.5 million he was being called upon to transfer to a matrimonial account. And the district court also expressed, for the record, its conclusion that it was persuaded that Mr. Chadwick was able to do that. Here, the district court applied a burden-shifting framework to hold that the government had satisfied its burden of demonstrating that knowledge. And that's law of the case at this point. But it is a distinction that nobody's ever admitted that they're able. It's not uncontested. It is, in fact, contested. The only thing there is not is testimony. But there's been position through counsel disputing that he's able to remember the password. But there was also the statement of the sister that she had seen him open those files. Right. So at some point before March of 2015, she saw him enter the password. We're told by the government it's there for a certainty that four years later, he remembers the password. It's mind-boggling. We can all take judicial notice of the fact that that may not be the case. People forget passwords. Sure, exactly. So if the court fails to enforce Section 1826, there could come a time where my client elects to testify to his lack of recollection or to make a case of some other sort to get released, which will certainly put the district judge in an unenviable position just in terms of. Assume without conceding that 1826 does not apply, that we conclude it does not apply. Is it your submission that there is some other limitation? Is it a due process limitation? Is it would be the amendment limitation? What would be the limitation on confinement if 1826 does not apply? Or are you suggesting to us that in order to avoid that conundrum, we should try hard to find 1826 applies? Exactly. The reason why it's important and serves the intent behind 1826 is because it obviates this dilemma, which is not well settled in the law, which is a massive confusion. And instead, you just say, has it been 18 months? And I don't think I'm asking the court to try hard. I think the ordinary meaning of the word. The problem that is, I'm sure Mr. Zalzman is going to argue it and it's suggested in the brief. Well, if that's the case, then a defendant in this situation plays the odds. Well, look, if I don't give him the password, I'm in for 18 months. But if I do give him the password, I'm looking at 10, 12 years. I think I forgot the password. Well, one problem with that line of analysis is that it begins from the premise that a client is guilty of a crime when, in fact, he hasn't been indicted for a crime. Hypothetically. And even if it doesn't begin from that premise. That is the equation that we're confronted with. Well, I don't understand why that is an appropriate premise. But my position is, as your honor stated it several moments ago, that these extremely difficult questions are obviated here. And they're not an issue on this appeal because 1826 applies and fix the right line. But that might be exactly what he's thinking. If I do open the computer, there are, let's say, 320 days of pornography in that computer. I'm going to get really hard time. So I'm going to hedge my bets and just stay here and see if I can get out some other way. But I will not open that computer because of what he's facing. So if we were going back to the beginning of this case. I don't say you have to have a bad argument. I'm just wondering. In that situation, this avenue may no longer be available in this case because my client has already been in prison for three and a half years. But if we were starting back at the beginning and this 18 month limitation had been respected, the government would have a remedy at that point. And that it could bring criminal contempt. You'd still have to come to this conclusion that there was a judicial proceeding. We'd have to agree with you on that on that point. And if it was a judicial proceeding, then incarceration is what I would take. So to conclude, there's not a judicial proceeding here is to say no judicial proceeding when a warrant is applied for. Hence, what is counter to the basic idea of the Fourth Amendment? That it's an independent judiciary weighing in on whether the government has shown by probable cause. It's a judicial determination. It's a judicial determination. But that's the statute's not worded in terms of the subsequent effect or impact of a judicial determination. It talks about ancillary to a judicial or grand jury proceeding. Any proceeding before or ancillary to any court of the United States? Any precedent, Mr. Donahue? Any precedent for the idea that a government official seeking a bench warrant before magistrate constitutes a judicial proceeding? Well, we've cited the principles that apply in that context in our briefing. We know that as a matter of the Fourth Amendment, the magistrate must be neutral and detached, right? And probable cause must be shown on oath or affirmation. So between that formal attestation and the idea of an independent authority, I believe the Fourth Amendment itself contemplates a judicial proceeding. It is a single party proceeding. It's a single party proceeding. But and then here, though, we've got a much proceeding became adversarial, as your honor pointed out earlier when there was an application pursuant to the All Writs Act. And in addition, Rule 41, in addition to the Fourth Amendment, structures a proceeding in that it fixes the venue. It provides for the court to supervise the warrant. And it requires that the warrant be returned with a verified inventory and filed with the clerk. So between the Fourth Amendment and Rule 41, I believe a search warrant application shows that there's a proceeding. Now, I don't have a precedent on that. And that's because seeking this information by means of a search warrant is a novel procedural device that the government has availed itself of, as far as I know, primarily in these password cases. Um, but if that's going to allow the protection of Section 1826 not to apply, then the court is just drawing a map for the government to circumvent. Well, maybe drawing a map to Congress that it can amend the legislation if it so desires. I don't see it other than stating we mean passwords. I don't really see how the legislation doesn't already plainly cover this. It speaks of providing information. And well, if we if we should rule that it does not cover this, then it is possible for Congress to amend the legislation if they so desire. Congress would have that power. But this court is obligated to give the plain meaning to the words of the text as it exists now. And the plain meaning of those words covers a command to a person to provide information, including, as Congress wrote in this fastidious enumeration, any book, paper, document, record, recording, or other material. So it seemed to mean any kind of computer tape or paper or document that could record information and said that compelling a person to turn that over or to provide it is within the meaning of this statute. Provide is a very abstract term as well. It's as abstract a term as you could select. And I think I am somewhat sympathetic to your view that there should be a cap of 18 months. However, this case involves images of child pornography in the computer. And it would seem to me that if we were to agree with you, we would be setting a precedent for anyone charged with an offense like this. So that's why I have a convenient lapse of memory regarding a password. I would rather stay in jail for 18 months than be facing 15 years once these images are in the prosecutor's hands. So that's what I'm looking at. Maybe you could satisfy my concern. Yes, that's what I was trying to do earlier by referring to the availability of a criminal contempt sanction. So in that situation, the person can be civilly confined for 18 months. If he still hasn't supplied the password and the government has shown by the necessary quantum of proof that he knows it and there's password, then he can be prosecuted for criminal contempt. How can they possibly show that he knows it? How can they prove that? According to this court, they've already shown that. I don't understand how they can show it. But that's the finding under this foregone conclusion analysis. Well, because I agree with the suggestion that no one can know that. He was seen using it to open up the computer. Yeah, four years ago. Four years ago. So the idea is, does he still remember a password four years ago? I don't remember every password. Depends upon how you make up the password. Yeah. It's a complex, factual question. That's what Congress steered off. The person who just decides, I'll gain this. I'll manage to limit myself to 18 months. That doesn't work. They can be prosecuted for criminal contempt at the end of that 18 months. And I would imagine the government would argue this person would be facing 15 years. Yeah, but the person would say, yeah, I knew the password 18 months ago, but I don't remember it now. And there's no way to. But the very concern that your honors are expressing would inform the factual determination. The judge would say, boy, it's convenient you don't remember that now. It may also be true. That's why it's troubling. But that's why you would prosecute him for criminal contempt. And then that question would go to a jury. If it's going to be more than six months confinement, the jury would have to decide whether he's in contempt. And that way, the jury protection would be respected. What would that trial look like? The issue before the jury is, does the defendant remember his or her password? Assuming that the government has not put a trustee inmate in the cell with him to get him to reveal the password a week or so before the trial starts, how in the world would that trial proceed? Well, if we're concerned, there'd be no way to persuade a jury of this. It boggles my mind why a judge's determination that it is so should be permitted to continuous confinement. Well, I'm not disagreeing necessarily with you, but that's the record that we're stuck with. I think it is, as I think your Honor sort of suggested before, among the most difficult factual questions imaginable of what is actually in the person's head, about the least susceptible to conclusive proof sort of factual issue as there is. It doesn't mean you can't reach a factual determination, but you're going to be haunted by whether or not it's correct. That's why it's important to have a jury do it, because juries make those kinds of factual determinations. But they make it in terms of specific intent. That's a very different kind of inquiry than what we have. It's an easier inquiry, but a disputed factual issue that there's no way of knowing for certain is ordinarily the sort of thing a jury should decide. OK, I think we saved some time, and we got on for a bit. Mr. Zalzman? Good morning, Your Honor. May I please the court, Robert Zalzman, on behalf of the government? It's a narrow question before this court. First, let me ask you a couple of questions. First of all, footnote 15, you are, and I've told you this many times, you have the utmost respect for me and for members of this court. Did you put that snake analogy into the brief? That is, without a doubt, the dumbest analogy I've ever read. I mean, it is ridiculous. The venomous snake on the box, is that yours? I did not come up with it, but I reviewed the brief, and I take responsibility. I was hoping you did not come up with it, and you took pity on whoever did and didn't want to tell them what a dumb analogy that was. So you left it in the brief. But I read that, and I had coffee, and I almost spit it out. That was, whoever came up with that, tell them that's not their best work. That is really, really weak. I'll pass it on. Yeah, that is pathetic. It really is. The next time I lecture, and it won't be in your class, but next time I lecture in an advocacy class, I'm going to read that brief and say, don't do this. But anyhow, go ahead. Your Honor, you can do that in my classes. So, but the question before the court, putting aside the analogy, is, does this section, does this statute, apply in this situation and put an 18-month limit? And the simple answer is, it does not. This court has- If it doesn't, then what do we start with? Is it like Kafka's perpetual postponement? This becomes perpetual incarceration? No, no. Harris addresses this and says- Assuming that he can remember, assuming, Harris assumes that he has the keys in his pocket, the traditional notion of contempt. What if he's really forgotten it? If he hasn't forgotten it, then I think it's a relatively easy argument. I know Mr. Donahue would disagree, but it seems to me that's an easy argument. Janneke, the guy served seven years. We had no problem with that under the circumstances. But those were all cases where the person did have the means to effectuate his release. What if he doesn't? There are two things that bring this kind of confinement to an end. One is where- Other than death. Other than death. One is where he can no longer comply, which would mean he's forgotten. And the other is where- How does he show that? He shows it in the same way that you prove any fact. Mr. Donahue keeps saying, this is so hard, this is so difficult. This is what district judges do every day, is they make factual determinations. And that requires a judicial proceeding. It would require a proceeding before the court. That's correct. But here, Mr. Rawls has never been willing to do that. His counsel told the court at this most recent hearing, he said, Mr. Rawls does not wish today either to put on evidence to his lack of recollection of the passwords or to attempt to enter the passwords. As I see it, those would be two roads out of contempt. And no, he does not wish to avail himself of either option at this time. He has the key. He has the power. He has the ability, if it's true, to say that he no longer remembers the password. He's purposely not availed himself of that. Let's assume that he comes in and says, I don't remember it. I remember that back when I was before the Magistrate Judge. That was two and a half years ago. I don't remember that password now. I don't write it down because everyone says, don't write your password down. I didn't. I don't remember what the password was. Then what? That's why we have district judges. And the district judge will make the decision. If that is true, then the contempt will be over and he'll be released. On the other hand, as Judge Roth has suggested, there is significant evidence here that he does remember this password. We start with the fact. If it's all two and a half years ago, the evidence here is that back when his sister saw him access those hard drives, he remembered the password. Let me ask this. I cannot for the life of me figure out why you don't prosecute this guy. You recite in your brief and it's recited in the affidavit for probable cause. You've got the forensic experts that can equate the hash marks, the hash dot on the computer's operating system, I guess it is, or in the computer log to show what sites were visited. I'm assuming we have no problem to get experts in who know those sites, who could testify that those sites are either predominantly or probably exclusively sites where child pornography is on the web. You've got the sister's testimony that she has seen him. So child pornography to her, I was very hard drives. You've got the phone that has some suggestive. There may not be clear evidence as to the age of the person, but it looks like you could prove that that's a minor on the telephone. Why not prosecute the guy? It is very likely that the government will prosecute if this is the only evidence that we have. But as the court well knows, we have one opportunity. We have to prove our case beyond a reasonable doubt. And it's completely appropriate for us to make every effort to gain all the evidence we can. If at the end of saying you want to hold the guy in prison for how, heaven knows how long, even though right now you've got a case that if you can prove what's in the affidavit, I'm assuming you can beyond a reasonable doubt, rather than going to trial with a guy, you want to leave him in prison for two and a half years, three years, four years, five years, six years, seven years, eight years. And then you'll decide, OK, let's prosecute him. Well, two things. One is I'm not saying that we have a strong case, and we have to consider that. But second, we don't want to keep him in prison. That's never been our position here. We want him to do what the United States District Court has ordered him to do, which is turn over the unencrypted computer. So that you can put him in prison. I'm not saying there's anything wrong with that if you prove your case. And then we'll make our determination, and the grand jury will make its determination, and a trial jury will make its determination. The system will proceed the way it should. You'll have the computer, Mr. Salazar? Yes, the government has. If unencrypted, I don't know the technology that is involved here. But if it is unencrypted, I've heard of law enforcement opening, that is, unlocking Apple phones, computers, laptops. Why can't that be done in this case? I am not, of course, a forensic expert. I can tell the court that the FBI is making continuous efforts. It has never stopped in its continuous effort to decrypt this computer, this hard drive. And as of now, has not been able to. It's because of the sophistication of the password, the length and complexity of the password. That doesn't mean it's not an easy thing for him to remember the phrase or code or whatever that he used. But the FBI has not had success despite continuous efforts. That's what I can tell you as of now. That might even support his argument. If it's a password that's layered several times and involves multiple characters. It might. And I don't think this is the... I'm happy to argue it. I don't know that this is the right form, given the way it's been presented, for us to argue whether he remembers the password or not. There are certainly inferences that can be drawn. What we know, and this court has said many times in child pornography cases, is that these offenders tend to keep this evidence for a very long time. It's important material to them. You can draw inferences from that. Important material for the government. Sure. But you can draw inferences from that that he knows exactly what the password is. Now, of course, he knew it at the time he showed his sister. But again, I don't know that this is the time to argue that. The question here is, is the district court correct in holding him in confinement, not to punish him, not to sanction him for criminal conduct, but to coerce his compliance with a lawful court order? What's your best argument that that was not a judicial proceeding? Well, I'm not saying it's not a judicial proceeding. What we're saying is... It was not a judicial proceeding. What I'm saying is, if you look at this statute, two important things. One is, if you look at the statute as a whole, it is addressed to witness testimony and production in the context of a trial or grand jury proceeding. That's not what it says. Well, that is how we read it. But the second thing... It says judicial proceeding or court proceeding. It doesn't say trial. No, I agree. But it would appear to refer to a contested hearing, whether it's evidentiary or whether it's a trial. But the second thing, what's so important here, and I think decisive, is the interpretive principle. And Judge Roth alluded to it in one of her questions. The interpretive principle is a limitation on a court's inherent power by statute is permissible, but it will not be read broadly. The Supreme Court has said this over and over and over again. The courts have inherent power to regulate the proceedings in front of the court. And the Congress certainly can limit that inherent power because the courts, after all, are creations of Congress. But what the Supreme Court said in chambers and many other places is the court will not lightly assume that the Congress is preempting the field. Now, Mr. Donahue this morning had this creative suggestion that that's not what this means. That what this means is, he said it's a threshold inquiry. That you first say, did Congress mean to limit the inherent power in any way? And once you answer that question and say yes, then all bets are off and we'll broadly interpret this statute. That's not what the Supreme Court has said. What has happened in chambers and all these other cases, over and over, you have a congressional statute that affects the exercise of the inherent power. The argument is then made, oh, Congress has preempted the field. It's over. There's no longer any inherent power left. Chambers involves sanctioning attorneys for vexatious conduct before the court. And so the argument in chambers was, that's it. Now that we have a rule, there's no place for any other exercise of judicial power. And the Supreme Court has consistently rejected that. And said that, in other words, you look at what Congress has done, but that's it. You don't assume that it has then occupied the field. Here, if you look at this statute, it does not talk about a search warrant proceeding. And the district court hit the nail on the head. When this statute says the person is held in confinement for the life of the court proceeding or of the term of the grand jury, that bears no relation to what we're dealing with here. What the district court correctly said, in this specific context, section 1826 cannot apply. Because the statutory phrase, no period of confinement shall exceed the life of the court proceeding, has no meaning. There is no case to be tried or grand jury whose term will expire, or that will decide whether an indictment should issue. But that does go to the issue of what subsection 1 means. What is a court proceeding? And you and your colleague or friend, as you would say, disagree about that. So I'm looking at the statute as a whole. I'm not saying that my friend is presenting a frivolous argument by any means. If you start looking at this word by word, you say witness, no, that doesn't fit. He's not a witness. But then you see court proceeding before a court. You say, OK, maybe. And then produced information, maybe. But you look at the statute as a whole, and you get to the part where he's held in confinement for the life of the court proceeding or the term of the grand jury. That's when you start to see this narrow. And then if you still have any doubt, you apply this interpretive principle, which is that we're not to lightly assume that Congress has met to supplant the field. And when you think about it, and I think this goes to the questions about Taking that point, if maybe I agree with you there, if you assume that Congress did mean to supplant the field, then what happens to the All Writs Act? It seems the All Writs Act would counsel that there is no preemption in the way you're using that term, because the inherent power that the Congress talks about in the All Writs Act clearly suggests that any limitation in 1826 is not an exclusive limitation. It doesn't apply to everything. Well, we already know as a matter of law that 1826 does not preempt the field, and that's the Harris decision. So Harris involves a guy filing liens, and he's told not to. Yeah, but again, the reason why Harris doesn't help me is that, again, the confederate who had the keys in his pocket, did not get all those cases, and even said that in Harris. And I'm assuming this is not that case. And I know you would not necessarily agree with that. No, no, I do, Your Honor. But Harris, I think, is important in a very limited way. What Harris shows, it's not this case. It's not compelling somebody to turn over a password. But what Harris does at least exemplify is that 1826 does not preempt the field. If 1826 were the be-all and end-all of civil contempt confinement, then it wouldn't apply. It would control Harris as well as everything else. So that's a very important statement in Harris, that 1826, it has some limit. It doesn't apply to every civil contempt. And then our position is that it doesn't apply here. And this is where we get into the benefit that Mr. Rawls is obviously aiming for. He doesn't want the government to see what's on the computer because of the potential penalties. And what that illustrates is how badly 1826 would fit with a criminal investigation. That's what we're dealing with here. It doesn't, in fact, Mr. Rawls, control the length of this court proceeding because this is a court proceeding, a miscellaneous action on a search warrant. And until the search warrant is returned complete, the proceeding continues. And as long as Mr. Rawls won't produce the unencrypted computer hard drive, the proceeding continues. So until he enables the search warrant proceeding to be completed by producing the unencrypted hard computer, the proceeding continues. And he holds the key to the end of the proceeding in his pocket. That's correct, Your Honor. Well, you see, that's correct. She used the term court proceeding. She did. She did. That's his argument. Of course. This court proceeding continues until he gives up the unencrypted computer. But what I have to say, and I know what you're suggesting, what I have to say is that the statute read as a whole still does not fit with this situation. You're saying it's not a court proceeding in the meaning of 1826. Correct. And it's not focused on a witness as 1826 is. And as I was saying, what we're dealing with here is a criminal investigation which doesn't have the same limitation in the ordinary courts Could you be specific? Why was it not a court proceeding? Of course, that's Mr. Donahue's argument. Why can't we consider it a court proceeding if there is an application in a court and there is a judge who makes a decision as to whether to grant or not a warrant? This is a court proceeding. The enforcement of a search warrant is a court proceeding. But we're not dealing with a situation addressed by 1826 addressed to a witness in a court proceeding. 1826 is focused on those who are compelled either to testify or produce information in a court proceeding or in a grand jury proceeding. And there's no indication here that Congress meant to further address this to the situation we have here. And what the Supreme Court has told us is we can't lightly assume that it did. The criminal investigation is different. Trials come to an end. Grand jury terms come to an end. Criminal investigations can go as long as the statute of limitations. And in fact, there is no statute of limitations for the crimes that Mr. Rawls may have committed. And so... Who asked that question? That answers the question. And so it would actually be odd for Congress to put this 18-month limit when it has enacted longer statutes of limitations. And in this case, no statute of limitations at all. And so as someone suggested earlier, this could be a matter for Congress. This is a policy debate that we're having. But right now, it's this court's job to enforce this statute. And this statute does not clearly apply here and should be assumed not to apply. At some point, some decision has to be made. If Mr. Rawls just hangs in there on this idea that he can't open the computer and maybe there is some substance to his argument that I can't remember the password, which has maybe about 15 characters, I just can't remember it. Theoretically, he can sit in jail the rest of his life. Your Honor, we have faced this situation before. No one takes pleasure in this. But there have been people before this court and others who have been in custody for this sort of thing, not necessarily passwords, but other contempts, much longer. No one takes pleasure in it. But what this court has said over and over is he has the key. If he no longer has the key... In those cases, the person clearly did. Janneke, in those cases, the person obviously had the power to disclose. The question that my colleague is putting to you is, if he doesn't, if he does not, then what? If he does not, then he should be released. But he needs to make that argument to the district court. He purposely did not make that argument of what we're discussing right now. His counsel represented... The argument that I should be released because I just can't come up with that password. If I would, I would open the computer. Exactly. What he said to the court instead is he does not wish today to put on evidence to his lack of recollection of the passwords. But why don't we remand it to the district court for a hearing and a finding as to whether or not he really can remember the password? That would be a judicial procedure. You could do that, but you could do that. You can do it, but you don't even need a remand. He can go make that motion any day, given he's under the court's authority. He can make that request any day and ask to put on that proof. And we'll respond as we see fit. But he's never done that. So that's not the issue before the court. So yes, in that sense, he has the key as well. If it's true that he's unable to comply, prove it. What Mr. Donahue says is... But then what? Let's assume he proves it, then what? Help me with that. Then the court releases him and that's the end of the contempt because he can't comply. Mr. Donahue says it's too tough. It's too hard, a factual determination. I don't accept that. This is what our very experienced, very capable district judges do every day. Not in this context. I can't tell you in the state court how many homicide cases I presided over with death qualified juries, many of them as waiver trials. None of them require this kind of inquiry into metaphysics, which is what this is. Does someone remember something? There was a specific intent to kill, ID cases, very, very different inquiry. This is an issue of knowledge and state of mind, and I would suggest that it is a factual determination that courts, both juries and judges, make regularly. In 10 years of being a trial court judge, I remember I couldn't even imagine how that hearing would unfold to the defendant saying when he'd have to testify. He didn't testify. I couldn't hold that against him under the Fifth Amendment. Then we had the whole other kind of fanciful inquiry. I don't see it as an unusual proceeding, Your Honor. But again, it's not before the court because he's never asked for it. I understand that. Let me ask this, and I really need to ask Mr. Donahue this. We've already held that the nature of the information that is being sought here does not fit within the Fifth Amendment. Given that, I would assume that if this case were ever to go to trial, not based upon the password, but based on what you have right now, the evidence in the affidavit, the judge could then ask the defendant. Well, you couldn't call him to the witness stand in that proceeding, but you could introduce evidence that he states that he hasn't been willing to state whether or not he remembers the password because that's not testimonial. And the jury, it would seem to me, may be able to get a charge on a negative inference based upon his unwillingness to, they could assume that he's unwilling. Now, you could argue whether or not that's a fair charge because maybe he's not able to. But even to the jury, to determine whether or not he really can't remember. It sounds like a good court argument. It does. I've given that a little thought. I mean, obviously, we haven't had to resolve that. I do think this would be evidence of consciousness of guilt. It seems like it would be. That the government would seek to introduce at a trial the fact that he refused to, despite a court order, to produce the password. So that certainly could be evidence. Given that, and the sister testimony, and the hashtags, I know you want to get this case to the maximum likelihood of convicting. But I'm not sure you're going to get a lot of cases that are stronger than that. The case is not, I don't, I shouldn't comment on the strength of it. I know you shouldn't. It's our obligation to present. It's our obligation to present our best case. Our best case will include what the court has said we should have, which is review of the hard drive. And he should produce it. He should do that right now. Or he should establish to the court that he can't do it. That's where we are. This is not unusual as a contempt proceeding. In the narrower context of trials, and evidentiary hearings, and grand jury proceedings, you have 1826. But it does not apply here. Thank you very much. Thank you. Sit down here. Judge McKee, you asked Mr. Zausmer several times why the government isn't prosecuting this. I'm sorry, say it again, please. You asked Mr. Zausmer why the government hasn't gone forward with the prosecution. I think it's at least possible that the Department of Justice has decided to use this case to try to approve a principle. And on the prior appeal, the assistant attorney general was on the breach for the government. So kind of echoing Judge Plantis' point earlier, I think they like my client. As a poster child for their position that they can squeeze this password out of someone. But on their standard, it's going to apply. There's nothing the matter with that, is there? Yes, there is something in the matter with it. And it's going to apply to any journalist, for example. Well, because they like the case of my client as supposedly what's the problem here. But on their standard, the same thing could happen to a journalist, say, who didn't want to supply a password because she didn't want to compromise her source. That's an easy drafting issue. We could fix that by the way the opinion has grown. No, but one thing I very much agree with Mr. Zalzmer about is that this appeal is about statutory construction. And I am grateful that the court is grappling with the difficult Fifth Amendment questions and question of proof. But Mr. Rawls is sitting in prison to have review of whether Section 1826 applies here. I found it notable that Mr. Zalzmer, I think in admirable candor, conceded that there's a judicial proceeding here. And also made plain that the government's construction of the statute relies on a canon and relies on looking to the whole statute and is not very much grounded in the text. The canon that the government refers to, that Judge Roth asked about at the outset of this proceeding, is addressed at pages 12 to 15 of our reply brief. I'm not making a novel argument today. And I would stress to the court the comparison between, say, the Michelson decision and the Chambers decision that the government stressed. Chambers did not hold anything about occupying the field. That's a misplaced concept here. It held that while sometimes Congress might enact a law to supplement judicial powers and provide a mechanism that's similar to one that already exists, when it does that, it's not preempting the powers. But in this case, where Congress is fixing an 18-month limitation upon confinement, it clearly intends, just as the statute in Michelson intends to limit judicial power and That trumps the All Writs Act, the authority to issue appropriate judicial orders to enforce court's orders. You're saying that is Trump 1826. That's a limitation on that language in the All Writs Act. Well, Section 1826 plainly is a lot more closer, narrower statute in that regard than the All Writs Act. Yes, I think there's an 18-month limitation if the statute applies. Whatever power exists under the All Writs Act is cabined by the 18-month limitation. Take the Chelsea Manning case. She was recently committed to custody for failing to testify. There's no doubt. I don't think there's any doubt that the 18-month limitation will apply there because she's being called upon to go on record and state facts before a grand jury. Right. This court in Schofield and its leading decision. This is a proceeding involving a search warrant. And the search warrant proceeding will continue until the search warrant is satisfied. Right. And that limitation is in the hands of Mr. Rolls, who can produce what is required by the legitimate search warrant. And if he refuses to do it, the court proceeding will continue until either he does do it or there is another determination. So the court proceeding has not terminated. And under subsection 1, we are sitting waiting for him having the keys to terminate the court proceeding in his pocket to do so. If that's a concern, it could be expressed to Congress. Congress at this point has enacted a statute that provides an 18-month limitation in any court of the United States. Not a proceeding that has a fixed endpoint. Not a grand jury proceeding. Any proceeding before any court of the United States, Mr. Zalzmer is not even making the argument Your Honor puts forward. He acknowledged that there's a proceeding. He's talking about looking at proceeding in terms of the totality of 1826. Yeah, that's a court proceeding. But we have to interpret that in terms of the overall contract of 1826. And I don't want to put words in his mouth. Well, and to repay the compliment, I respect he's making an argument about statutory interpretation. And he's calling upon the usual tools that attorneys draw upon. But I think he misinterprets the canon that he's placing very heavy reliance on. Because it's just that you don't assume a preemptive intent. If you've got a preemptive intent, this canon does not say read the statute narrowly. There's no canon to that effect. And it seems like that canon would probably be in tension with the constitutional principle that the lower federal courts are created by Congress, which has the power to fix their jurisdiction. Is there any evidence that you're aware of that court proceeding was meant by Congress to include an application for search warrants? To my mind, the most persuasive thing in legislative history is that Congress repeatedly spoke about information needed to move forward an investigation. That this power, the civil contempt power, would be exercised when a person was withholding information needed to move forward an investigation. That appears in the Senate report, which was written by the drafters of the original bill, and we cite it in our briefing. So in that sense, this is analogous to the situation before a grand jury. You need information to move forward an investigation. I think it therefore was thinking about the situation where a contender is frustrating a proceeding, and Congress recognized, in fact, it wanted to urge the courts to use their civil contempt power in that context. However, at the same time, it fixed an 18-month limitation. And that alone would allow us to conclude that Congress meant for applications for search warrants? No, I think the text allows you to conclude that. I think the words provide information by their ordinary meaning reach this situation. In terms of the legislative history, I think it supports that position as well. But I don't think we're going to need to look there. I think the text is very broadly written. And in as much as it's undesirable results, then the need for reform should be addressed to Congress. Thank you. I criticized appropriately sort of that ridiculous analogy of the snake in Putnam 15. I just want to mention to you, in future arguments, you've got to let the judges ask their questions without trying to talk over it. I didn't. I should have said something earlier. It's really annoying when you're trying to ask a question and the attorney you're asking the question of does not stop to let you get the question out. It's like some of the contest of who can over speak the other the most. But just for future, I'm sure I'll see you again for future reference. Thank both counsel for a very helpful argument, a very difficult case. We're going to get a transcript of the argument. If the consequence seems to Williamson, he can explain. You know how to do it. We'll take care of that. OK, great. Thank you, Mr. Don. You don't have to worry about it. Mr. Zosman is going to take care of that. Next matter is Clavin versus.